# EXHIBIT A



# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

**Eloy S. Inos**
Governor

**Ralph DLG. Torres**
Lieutenant Governor

The Honorable Joseph P Deleon Guerrero
Speaker, House of Representatives
Nineteenth Northern Marianas Commonwealth Legislature
Saipan, MP 96950

DEC 0 4 2015

The Honorable Victor B. Hocog
Senate President
Nineteenth Northern Marianas Commonwealth Legislature
Saipan, MP 96950

Dear Mr. President and Mr. Speaker:

This is to inform you that I have signed into law, with the exceptions of several disapproved parts described below, House Bill 19-95, HD1, HS1, SS1. This appropriation bill passed by the Nineteenth Northern Marianas Legislature creates an annual Casino License Fee to fund the Commonwealth Casino Commission and specifically provides by law that funds received from Casino License Fees shall not be construed as Commonwealth General Funds (*and for other purposes*).

I agree with the fundamental purpose of this legislation to appropriate money so that the Commonwealth Casino Commission is funded by the licensee to do the all-important work of regulating the gaming industry on Saipan. House Bill 19-95, HD1, HS1, SS1 accomplishes this goal. However, there are several issues with which I disapprove and additional legislative work is required on other matters.

## VETOED PARTS OF THE ENACTMENT

Based on the reasons set forth below I have disapproved of the following parts of the enactment:

### Section 5, sub-parts (c) and (d) (which provide for a nonrefundable tax credit)

Sub-parts (c) and (d) which provide the licensee with a tax credit to be applied against the CNMI's Gross Revenue Tax in the amount of the casino regulatory fee are disapproved. As originally envisioned in the enabling statute, the cost of regulating casino gaming activities on Saipan are to be paid in full by the licensee and I am not convinced there are good reasons to grant tax relief for this expense.

Caller Box 10007 Saipan, MP 96950 Telephone: (670) 237-2200 Facsimile: (670) 664-2211/2311

**Section 10 (which amends Section 2314 of Title Four of the Commonwealth Code)**

The final clause of the third sentence which provides that any decision of the Commission to revoke the exclusive casino license shall be submitted to the legislature for approval by a majority of the members of each house of the legislature through a joint resolution is disapproved as an unconstitutional *'legislative veto'* in conflict with the United States Supreme Court holding originally set out in *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919 (1983).

**Section 15 (creating a new section of law)**

Section 15 is disapproved in its entirety because it conflicts with Section 13 of the enactment and members of the Commonwealth Casino Commission and its employees are not to be construed as employees of the Commonwealth.

## GENERAL COMMENTS

In addition to the disapproved parts, I want to comment on the following provisions:

**Section 10**

If the legislature wishes to enhance oversight over the important decision to revoke the exclusive casino license, I suggest that a set of criteria be put into legislation which would outline the process and procedure for the revocation that the Commonwealth Casino Commission shall follow in a manner consistent with the Constitution.

**Section 14**

I encourage the legislature to revisit the amendment contained in this section allowing people within the ages of 18 and 21 to serve alcoholic beverages. The CNMI Government should think through whether an employee -- older than 18 years of age -- is a more appropriate age delineation to permit the service alcohol beverages.

In closing, I urge the legislature to take careful note of the comments in this transmittal and to address the issues specifically raised. This bill, with the exception of the vetoed portions noted above, becomes Public Law No. 19-24.

Copies bearing my signature are forwarded for your reference.

Sincerely,

RALPH DLG. TORRES
Acting Governor



# *House of Representatives*

19th NORTHERN MARIANAS COMMONWEALTH LEGISLATURE

P.O. BOX 500586

SAIPAN, MP 96950

November 20, 2015

The Honorable Ralph DLG. Torres
Acting Governor
Commonwealth of the Northern
  Mariana Islands
Capitol Hill
Saipan, MP 96950

Dear Acting Governor Torres:

I have the honor of transmitting herewith for your action **H. B. No. 19-95, HD1, HS1, SS1,** entitled: "To Clarify the powers of the Commonwealth Casino Commission and to make needed changes to the Commonwealth Code given the unique regulatory oversight of the Casino Industry in the Commonwealth; and for other purposes.", which was passed by the House of Representatives and the Senate of the Nineteenth Northern Marianas Commonwealth Legislature.

Sincerely yours,

Linda B. Muña
House Clerk

Attachment

Public Law No. 19-24



*Nineteenth Legislature*
*of the*
*Commonwealth of the Northern Mariana Islands*

# IN THE HOUSE OF REPRESENTATIVES

**Second Regular Session**

**August 25, 2015**

**Representative Rafael S. Demapan**, of Saipan, Precinct 2 (*for himself,* Representative Angel A. Demapan) in an open and public meeting with an opportunity for the public to comment, introduced the following Bill:

---

## H. B. No. 19-95, HD1, HS1, SS1

## AN ACT

## TO CLARIFY THE POWERS OF THE COMMONWEALTH CASINO COMMISSION AND TO MAKE NEEDED CHANGES TO THE COMMONWEALTH CODE GIVEN THE UNIQUE REGULATORY OVERSIGHT OF THE CASINO INDUSTRY IN THE COMMONWEALTH; AND FOR OTHER PURPOSES.

---

The Bill was referred to the House Committee on Judiciary and Governmental Operations, which submitted Standing Committee Report 19-35; adopted September 25, 2015.

**THE BILL WAS PASSED BY THE HOUSE OF REPRESENTATIVES ON
FIRST AND FINAL READING, SEPTEMBER 30, 2015;**
*with amendments* in the form of H. B. 19-95, HD1, HS1 and transmitted to the
THE SENATE.

The Bill was referred to the Senate Committee on Resources, Economic, Development and Programs.
**THE BILL WAS PASSED BY THE SENATE ON FIRST AND FINAL READING, NOVEMBER 3, 2015;**
*with amendments* in the form of H. B. 19-95, HD1, HS1, SS1.

The House of Representatives accepted the Senate amendments and passed H. B. 19-95, HD1, HS1, SS1 during its 9th Day, Second Session on November 17, 2015.

**THE BILL WAS FINALLY PASSED ON NOVEMBER 17, 2015.**

_____
Linda B. Muña, House Clerk



*Nineteenth Legislature*
*of the*
*Commonwealth of the Northern Mariana Islands*

# IN THE HOUSE OF REPRESENTATIVES

**Ninth Day, Second Regular Session**
**November 17, 2015**

## H. B. No. 19-95, HD1, HS1, SS1

### AN ACT

**TO CLARIFY THE POWERS OF THE COMMONWEALTH CASINO COMMISSION AND TO MAKE NEEDED CHANGES TO THE COMMONWEALTH CODE GIVEN THE UNIQUE REGULATORY OVERSIGHT OF THE CASINO INDUSTRY IN THE COMMONWEALTH; AND FOR OTHER PURPOSES.**

**Be it enacted by the Nineteenth Northern Marianas Commonwealth Legislature:**

1      **Section 1. <u>Findings and Purpose</u>.** The Commonwealth Casino Commission was

2      established to regulate casino gaming by the exclusive casino licensee. The Commonwealth

3      Casino Commission has since organized and promulgated, on an emergency basis,

4      regulations governing the conduct of casino gaming by the exclusive casino licensee and will

5      continue its oversight responsibilities by adopting permanent regulations shortly. In so

6      doing, the Commission has identified, and will continue to identify, areas where further

7      legislation is required to enable the Commission to discharge its obligations to the people of

8      the Commonwealth and to uphold and fulfill the terms of the Casino License Agreement

HOUSE BILL 19-95, HD1, HS1, SS1

1  granted to the exclusive casino licensee. The legislation proposed herein will ensure the

2  annual funding of the Commission on a continuing appropriation basis by requiring an annual

3  Casino Regulatory Fee regardless of the activities or applications made to the

4  Commonwealth Casino Commission. At all times, the Legislature intends that the

5  Commonwealth Casino Commission is an agency of the Commonwealth.

6      The Legislature finds and declares that this Act is necessary and is a proper use of the

7  legislative power granted by Article II of the Commonwealth Constitution.

8      **Section 2. Amendment.** Section 2301 of Title Four of the Commonwealth Code is

9  hereby amended to read as follows:

10      **"§ 2301. Exclusion from Gambling Prohibition.**

11      Casino gaming and wagering is authorized in the Commonwealth provided that such

12  gaming and wagering occurs in the casino facilities of the casino operator licensed pursuant

13  to this chapter or in a casino facility licensed pursuant to the laws of a Senatorial District."

14      **Section 3. Amendment.** Section 2302 of Title Four of the Commonwealth Code is

15  hereby amended by amending subsection (b) and adding a new subsection (e) to read as

16  follows:

17      "(a) [Unchanged.].

18      (b) Funds received from the casino license fees pursuant to 4 CMC § 2306

19  shall not be Commonwealth general funds and such funds shall be appropriated

20  pursuant to this chapter.

21      (c) [Unchanged.].

22      (d) [Unchanged.].

2

1    (e) Casino Regulatory Fee: Any fees imposed by the Commission on the

2    exclusive casino licensee pursuant to this Act or by regulation, excluding the

3    Exclusive License fees described in 4 CMC § 2306, are capped on an annual basis as

4    described in Section 2309 of this chapter."

5    **Section 4.  Amendment.** Section 2307 of Title Four of the Commonwealth Code is

6    hereby amended as follows:

7    "Notwithstanding any other law to the contrary, the moneys collected for the

8    application and exclusive license pursuant to 4 CMC § 2306 shall be deposited into

9    the Commonwealth Treasury in a separate account which shall be allocated to and

10    available for appropriation as follows:

11    (a) $2,000,000.00 of the annual license fee shall be allocated to the First

12    Senatorial District to be appropriated by the First Senatorial District Legislative

13    Delegation. Provided, however, that the funds shall first be appropriated to pay for the

14    25% reduction of the First Senatorial District's retirees and the beneficiaries' pension.

15    (b) $2,000,000.00 of the annual license fee shall be allocated to the Second

16    Senatorial District to be appropriated by the Second Senatorial District Legislative

17    Delegation. Provided, however, that the funds shall first be appropriated to pay for the

18    25% reduction of the Second Senatorial District's retirees and the beneficiaries'

19    pension.

20    (c) $26,000,000.00 of the annual license fees received in the first year shall be

21    allocated to the Third Senatorial District for the following:

3

**HOUSE BILL 19-95, HD1, HS1, SS1**

(1) $25,000,000.00 shall be expended by the Secretary of Finance without appropriation in the following priority:

    (i) To restore the 25% reduction of the retirees and the beneficiaries' pensions of the Third Senatorial District.

    (ii) To pay interest to active members who terminated their membership in the defined-benefit plan under Public Law No. 17-82, as amended by Public Law No. 18-02 [1 CMC §§ 8482-8488]. If the monies are not sufficient to pay all outstanding interest, the Secretary of Finance shall establish a "Public Law No. 17-82 Interest Account," and the monies distributed for interest under this subparagraph shall be deposited therein. The interest shall be paid proportionately from the account on a semi-annual basis until such time that all former defined-benefit members have been paid.

(2) $1,000,000.00 shall be allocated to the Third Senatorial District to be appropriated by the Third Senatorial District Legislative Delegation.

(d) $11,000,000.00 of the annual license fees received in years after the first year shall be allocated to the Third Senatorial District for the following:

(1) $10,000,000.00 shall be expended by the Secretary of Finance without appropriation to restore the 25% reduction of the retirees and the beneficiaries' pensions of the Third Senatorial District.

(2) $1,000,000.00 shall be allocated to the Third Senatorial District to be appropriated by the Third Senatorial District Legislative Delegation.

4

1    (e) The Secretary of Finance shall establish and maintain a Commonwealth

2    Casino Application Fee Special Fund (CCAF Special Fund) to be kept separate and

3    apart from the general funds of the Commonwealth government.  The nonrefundable

4    application fees shall be deposited in the CCAF Special Fund and expended by the

5    Commonwealth Lottery Commission, without appropriation, for the investigation of

6    license applicants pursuant to 4 CMC § 2318 and any other costs associated with

7    reviewing the applications, granting or denying applications for the exclusive license.

8    The expenditure authority for the Commonwealth Lottery Commission shall be the

9    Chairman of the Commonwealth Lottery Commission.  Any funds remaining in the

10    CCAF Special Fund after the issuance of the exclusive license and payment of all

11    encumbered expenses related to reviewing the application and granting or denying the

12    application for the exclusive license, including travel or meeting cost, shall be

13    transferred to the Commonwealth Casino Commission Regulatory Fee Fund as

14    established by 4 CMC § 2309 for disposition.

15    **Section 5.  Amendment.**  Subject to codification by the CNMI Law Revision

16    Commission, Title Four of the Commonwealth Code is hereby amended by adding new

17    section 2309 to read as follows:

18    **"§ 2309. Commonwealth Casino Commission Regulatory Fee Fund.**

19    (a) Casino Regulatory Fee. There is established a casino regulatory fee, which

20    is an annual fee due on or before October 1 of each year beginning October 1, 2015.

21    The casino regulatory fee is the only fee payable by the exclusive casino licensee to

22    the Commission  and will cover costs, including but not limited to, those associated

HOUSE BILL 19-95, HD1, HS1, SS1

1   with the licensing, testing, certification, auditing and approval of all casino slots and

2   other gaming machines, casino table games and all other casino gaming activities

3   conducted by the exclusive casino licensee at the licensed casino and regulated by the

4   Commission as well as the costs of all applications, including their review, renewal

5   and all related investigations, for licensing or permit or consent for casino employee

6   licenses, casino key employee licenses. The casino regulatory fee is due regardless of

7   actual costs incurred by the Commission.

8   (b) Calculation of casino regulatory fee: The casino regulatory fee will be a

9   flat fee at a fixed rate of $3 million annually with a five percent (5%) increase every

10  five years for the following twenty years. After the twentieth year, the maximum

11  Casino Regulatory Fee will be reached and maintained for the remaining duration

12  until the end of the exclusive casino license term, including all extensions of the

13  casino license.

14  (c) Nonrefundable Credit: A licensee may apply all of the Casino Regulatory

15  Fee collected by the Commission as a non-refundable credit against the taxes imposed

16  by 4 CMC § 1301. No such credit will be allowed until the casino regulatory fee has

17  been paid in full and the threshold is met in subsection (d).

18  (d) The threshold of taxes paid. When the taxes paid for 4 CMC § 1301

19  exceeds $20 million annually, the exclusive casino licensee may apply the non-

20  refundable credit in the manner so described in subsection (c) above.

HOUSE BILL 19-95, HD1, HS1, SS1

(e) Authorization: The Commission is authorized to collect the Casino Regulatory Fee as described in Section 2309(a) of this chapter and the receipt of full payment will be sufficient for Section 2309(b) purposes.

(f) The Secretary of Finance shall establish and maintain a Commonwealth Casino Commission Regulatory Fee Fund (CCCRF Fund) to be kept separate and apart from the general funds of the Commonwealth government. The non-refundable application fees, casino regulatory fees, and renewal fees for casino employee licenses, casino key employee licenses, casino service provider licenses, machine and table licenses, casino-related application fees, renewal fees, or casino-gaming related regulatory fees of any kind established by and charged by the Commission shall be deposited into the CCCRF Fund. The CCCRF Fund shall be subject to annual appropriation beginning fiscal year 2017. The CCCRF shall be expended by the Commonwealth Casino Commission for the operation, personnel, and all other expenses of the Commission including the investigation and licensing of key employees, employees, service providers, machines, gaming tables, and any other fees and costs associated with reviewing the applications for various licenses. The expenditure authority for the Commission shall be the Chairperson of the Commonwealth Casino Commission or his designee. The Secretary of Finance shall maintain records and account for the expenditures made from the CCAF and CCCRF Fund.

(g) Notwithstanding Section 2309(f) and 2314(l) of this chapter, the casino regulatory fee of $3,000,000.00 for fiscal year 2016 is hereby appropriated to the

Commonwealth Casino Commission for its personnel and operations expenditures. The expenditure authority of the funds appropriated herein shall be the chairperson of the Commission. Subsequent casino regulatory fee payments shall be subject to appropriation as provided in Section 2314 (l). The Commission is authorized to hire or fill 35 full-time employee positions for FY 2016.

(h) Regulations: Secretary of Finance or designee may promulgate regulations consistent with the purposes of this Section."

**Section 6.** **Amendment.** Section 2313(a) and (b)(4) of Title Four of the Commonwealth Code is hereby amended as follows:

"(a) The Commonwealth Casino Commission is hereby established as an autonomous public agency of the government of the Commonwealth of the Northern Mariana Islands.

(b) (4) Each member shall serve a term of six years, except that of the members first appointed, two shall serve a term of four years, and three shall serve a term of six years, however, each member shall serve one term. A term of a member is defined as the time a member serves as a Commissioner regardless of the duration. This provision shall be effective as of May 1, 2014."

**Section 7.** **Amendment.** Sections 2313(g) and (i) of Title Four of the Commonwealth Code is hereby amended as follows:

"(g) *Compensation.* Members of the Commission shall each be compensated at the rate of $40,000.00 for the first year of the Commission's existence. After the first year of the Commission's existence, Commissioners shall be compensated at the

rate of $65,000.00 per annum; provided that each commissioner must attend all scheduled meetings unless excused by the chairperson of the Commission. All travel will be subject to 1 CMC §7407.

(i) *Meetings and Quorum.*

(1) Meetings of the commission will be held at the discretion of the chairperson at such times and places as he or she may deem necessary and convenient, or at the call of a majority of the members of the commission.

(2) Except as provided in this chapter, the commission shall in all respects comply with the provisions of the CNMI Open Government Act as set forth in 1 CMC § 9901 *et seq.*

(3) The minimum number of members needed to constitute a quorum for the conduct of Commission business shall be three members. The Commission is encouraged to adopt rules and regulations to provide for the appearance at meetings telephonically or via videoconference by members who are not physically present at the meeting. A member who appears telephonically or via videoconference pursuant to Commission rule or regulation shall be deemed present to constitute a quorum."

**Section 8.  Amendment.** Section 2312 (b) of Title Four of the Commonwealth Code is hereby amended as follows:

"(b) "Casino employee" means any natural person employed by the licensed casino who carries out or conducts casino gaming activities as part of the business of the exclusive casino licensee, which person shall be eighteen years of age or older and

**HOUSE BILL 19-95, HD1, HS1, SS1**

hold a license granted by the Commission.  Persons deemed to be casino employees shall include:

(1)  Table games personnel who attend to or conduct gaming activities, including dealers, floor people, pit mangers and shift managers.

(2)  Cage and count room personnel who support gaming activities within the casino, including cashiers, supervisors and shift managers.

(3)  Security personnel who work within the casino gaming areas, including guards, supervisors and shift managers.

(4)  Surveillance personnel who work within the casino gaming areas, including operators, supervisors and shift managers.

(5)  Marketing personnel who attend to or support gaming activities within the casino gaming areas, including hosts, marketing representatives, supervisors and shift managers.

(6) Slot machines personnel who attend to or support gaming activities within the casino, including attendants, technicians, supervisors and shift managers.

(7) Accounting personnel who work directly with financial information relating to gaming activities, including revenue auditors staff accountants and supervisors.

(8) Information technology personnel who attend to or support gaming activities within the casino, including technicians, engineers and supervisors.

(9)   Members of the management team who are manager level and above and who oversee or supervise or have responsibilities over any of the above operations.

(10)   Executive directors of the casino licensee."

**Section 9. <u>Amendment</u>.** Section 2312 (e) of Title Four of the Commonwealth Code is hereby amended as follows:

"(e) "Casino service provider" means a person subject to licensing pursuant to this chapter that offers goods or services directly related to casino gaming activities, including such persons as gaming equipment manufacturers, importers, distributors, or repairers; and casino security services;"

**Section 10. <u>Amendment</u>.** Section 2314 of Title Four of the Commonwealth Code is hereby amended by amending subsection (h) and adding the new subsections as follows:

"(h) The Commission shall not have the authority to issue a license to the exclusive casino licensee. The power to issue such a license lies with the Commonwealth Lottery Commission.  The license shall not be suspended or revoked absent finding of clear and convincing evidence during a hearing pursuant to 1 CMC § 9101 *et. seq.* by unanimous vote of the Commonwealth Casino Commission; ~~provided that any decision of the Commission to revoke the exclusive casino license shall be submitted to the legislature for approval by a majority of the members of each house of the legislature through a joint resolution.~~ The statute of limitation shall prohibit filing of violations not decided within six (6) months of the alleged incident or action.

(i) Information, data deemed confidential; exceptions.

(1) Except as otherwise provided in this act, all information and data required by the commission to be furnished pursuant to this chapter or the regulations promulgated hereunder, or which may otherwise be obtained, relative to the internal controls or to the earnings or revenue of any applicant or licensee shall be considered to be confidential and shall not be revealed in whole or in part except in the course of the necessary administration of this Act, or upon the lawful order of a court of competent jurisdiction, or, with the approval of the Attorney General, to a duly authorized law enforcement agency.

(2) All information and data pertaining to an applicant's criminal record, family, and background furnished to or obtained by the division or the commission from any source shall be considered confidential and shall be withheld in whole or in part, except that any information shall be released upon the lawful order of a court of competent jurisdiction or, with the approval of the Attorney General, to a duly authorized law enforcement agency.

(3) Notice of the contents of any information or data released, except to a duly authorized law enforcement agency pursuant to paragraph (1) or (2) of this subsection, shall be given to any applicant or licensee in a manner prescribed by the rules and regulations adopted by the commission.

1      (4) The following information to be reported periodically to the

2    commission by a casino licensee shall not be considered confidential and shall

3    be made available for public inspection:

4      (A) A licensee's gross revenue from all authorized casino

5    gaming activities as defined in this chapter, and the licensee's gross

6    revenue from simulcast wagering;

7      (B) (i) The dollar amount of patron checks initially accepted by

8    a licensee, (ii) the dollar amount of patron checks deposited to the

9    licensee's bank account, (iii) the dollar amount of such checks initially

10    dishonored by the bank and returned to the licensee as uncollected, and

11    (iv) the dollar amount ultimately uncollected after all reasonable

12    efforts;

13      (C) The amount of gross revenue tax or investment alternative

14    tax actually paid and the amount of investment, if any, required and

15    allowed, pursuant to Commonwealth law;

16      (D) A list of the premises and the nature of improvements,

17    costs thereof and the payees for all such improvements, which were the

18    subject of an investment required and allowed pursuant to

19    Commonwealth law;

20      (E) A list of the premises, nature of improvements and costs

21    thereof which constitute the cumulative investments by which a

22    licensee has recaptured profits pursuant to Commonwealth law;

(F) All quarterly and annual financial statements presenting historical data which are submitted to the commission, including all annual financial statements which have been audited by an independent certified public accountant licensed to practice in the CNMI; and

(G) The identity and nature of services provided by any person or firm receiving payment in any form whatsoever for professional services in connection with the authorization or conduct of games conducted at a casino establishment.

(j) The Commission may impose reasonable charges and fees for direct costs incurred in the review, redaction, and copying, by the Commission of documents subject to public inspection without regard to whether the document is merely inspected by the requestor or whether copies are requested. Such fees shall be deposited into the CCCRF Fund.

(k) The Commission shall regulate one live training facility of non-permanent duration and all permanent facilities as are consistent with the provisions of the Casino License Agreement granted to the exclusive casino licensee and together shall be operated by the exclusive casino licensee.

(l) The Commission shall submit to the legislature for approval on or before April 1 of each year a proposed annual budget for the next fiscal year in accord with the budgeting and planning procedures applicable to all departments of the Executive Branch beginning fiscal year 2017. Within its proposed budget, the Commission shall

itemize all personnel, travel, and other expenses for the fiscal year in question; the sums required to be expended during the year with respect to its casino regulatory responsibilities; and a detailed statement of all other Commission assets, liabilities, revenues and expenditures."

**Section 11. <u>Amendment</u>.** Section 2315(c) of Title Four of the Commonwealth Code is hereby amended as follows:

"(c) The Executive Director shall be the head of the administration of the Commission, and subject to the general oversight and direction of the Commission, shall organize the work of the Commission in a manner that will ensure its efficient and effective operation and, subject to the budgetary authority, the Executive Director may hire and terminate such staff, including a legal counsel and other professionals, necessary to carry out the purpose of the Commission.  Such staff shall be exempt from the civil service.  The Executive Director shall obtain such equipment, rent or build such additional office space, and generally make such regular office expenditure and acquisitions as necessary to establish and maintain a working office suitable for the Commission to effectively function pursuant to this chapter."

**Section 12. <u>Amendment</u>.** Section 2323 of Title Four of the Commonwealth Code is hereby amended as follows:

**"§ 2323. Gambling by Commission and Licensees Prohibited.**

(a) No member, officer, employee, or agent of the Commission shall play any game in or make any bet or wager:

(1) the casino under the jurisdiction of the Commission;

(2) any other gaming establishment reasonably associated with any such gaming establishment; or

(3) any gaming establishment, the owner, lessee, operator, or manager of which is an applicant for a license from the Commission, or is a potential applicant that has entered into discussions with the Commission prior to such application and has not clearly abandoned its interest in a license, or is reasonably associated with such an applicant or potential applicant; unless such playing of games or making of bets or wagers is absolutely necessary for investigative, compliance or enforcement purposes."

**Section 13. <u>Amendment</u>.** Section 2201(b) (4) of Title Seven of the Commonwealth Code is hereby amended as follows:

"(4) "Employee" means an officer, elected or appointed official, exempted service, excepted service, classified or unclassified employee, or servant of a public entity, whether or not compensated, but does not include an independent contractor of the Commonwealth. Employee includes former employees of the Commonwealth. Members of the Commonwealth Casino Commission are not employees of the Commonwealth but and shall be indemnified and defended as if they were employees of the Commonwealth."

**Section 14. <u>Amendment.</u>**   Subject to codification by the CNMI Law Revision Commission, the Commonwealth Code is amended by the addition of a new section which reads as follows:

1  "**§ xxx.** Notwithstanding any other law to the contrary, a holder of a casino

2  employee or casino key employee license issued by the Commonwealth Casino

3  Commission who is under 21 years of age but at least 18 years of age may possess

4  and serve, but may not consume, alcohol in the course of the licensee's employment

5  for which (s)/he is licensed."

6  ~~Section 15.  Amendment.  Subject to codification by the CNMI Law Revision~~

7  ~~Commission, the Commonwealth Code is hereby amended by the addition of a section as~~

8  ~~follows:~~

9  ~~"§ xxx.  Commonwealth Casino Commission and its agents deemed~~

10  ~~essential.~~

11  ~~Notwithstanding any other provision of law, in the event of a budgetary or~~

12  ~~other fiscal crisis which necessitates a temporary closure of the nonessential~~

13  ~~commonwealth agencies of the Commonwealth, the Commonwealth Casino~~

14  ~~Commission and its agents shall be deemed to be essential employees and shall~~

15  ~~continue to perform their duties."~~

16  **Section 16.  Severability.**  If any provisions of this Act or the application of any such

17  provision to any person or circumstance should be held invalid by a court of competent

18  jurisdiction, the remainder of this Act or the application of its provisions to persons or

19  circumstances other than those to which it is held invalid shall not be affected thereby.

20  **Section 17.  Savings Clause.**  This Act and any repealer contained herein shall not be

21  construed as affecting any existing right acquired under contract or acquired under statutes

22  repealed or under any rule, regulation, or order adopted under the statutes.   Repealers

1    contained in this Act shall affect any proceeding instituted under or pursuant to prior law not

2    yet reduced to final judgment.   The enactment of the Act shall not have the effect of

3    terminating, or in any way modifying, any liability, civil or criminal, which shall already be

4    in existence on the date this Act becomes effective.

**HOUSE BILL 19-95, HD1, HS1, SS1**

1    **Section 18.   Effective Date.**   This Act shall take effect upon its approval by the
2    Governor, or its becoming law without such approval.

Attested to by:    _____
                    *Linda B. Muña, House Clerk*

Certified by:      _____
                    **SPEAKER JOSEPH P. DELEON GUERRERO**
                    *House of Representatives*
                    *19th Northern Marianas Commonwealth Legislature*

Approved     this  4th  day of  December , 2015

_____
**RALPH DLG. TORRES**
*Acting Governor*
*Commonwealth of the Northern Mariana Islands*

19